

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0507-22

---

### WADE HARRELL THOMSON, Appellant

### v.

### THE STATE OF TEXAS, Appellee

---

### ON APPELLANT'S AND STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE FIRST COURT OF APPEALS
### GRIMES COUNTY

---

RICHARDSON, J., delivered the opinion of the Court in which SCHENCK, P.J., NEWELL, KEEL, WALKER, MCCLURE, FINLEY, and PARKER, J.J. joined. YEARY, J. concurred in the result.

## OPINION

Wade Harrell Thomson, Appellant, was convicted by a jury for ten counts of

possession of child pornography. Post-conviction, the State discovered and disclosed

certain impeachment evidence that Appellant could have used to support his Fourth Amendment claims during trial. While his appeal was already pending and after the trial court lost plenary power, Appellant filed an untimely motion for new trial which the trial court denied by operation of law.

The first question before this Court is whether the First Court had the authority to abate the appeal and order the trial court to hear Appellant's motion for new trial in light of the disclosure of new evidence. We hold that the First Court did not. We also hold all remaining grounds of review to have been improvidently granted.[1] We, therefore, reverse the First Court and remand the case to continue proceedings consistent with this opinion.

## Background

Appellant was convicted of ten counts of possession of child pornography on May 20, 2020. (CR 424-56). The next day, Appellant filed his notice of appeal. (CR 499-501). On May 26, the Supreme Court of Texas issued its Seventeenth Emergency Order Regarding the COVID-19 State of Disaster. 609 S.W.3d 119 (Tex. 2020). As relevant, the order stated:

---

[1] This Court also initially granted review of (1) whether the court of appeals misconstrued the plain view doctrine to permit an inadvertent vantage point rather than a lawful vantage point; and (2) whether a person's limited consent encompasses an officer's inadvertent exceeding of the scope of that consent. We now hold these grounds of review to have been improvidently granted.

> Subject only to constitutional limitations, all courts in Texas may in any case, civil or criminal—and must to avoid risk to court staff, parties, attorneys, jurors, and the public—without a participant's consent: . . . modify or suspend any and all deadlines and procedures, whether prescribed by statute, rule, or order, for a stated period ending no later than September 30, 2020.[2]

Nevertheless, when the 30-day deadline for Appellant to file a motion for new trial passed (June 19, 2020), no such motion was filed.

However, on July 13, 2020, the State, in accordance with its ethical obligations, provided Appellant with a *Brady* notice regarding previously undiscovered impeachment evidence against Appellant's arresting officer.[3] (CR 552-53). On July 14 and July 15, the reporter's record and the clerk's record were filed in the court of appeals respectively. Nevertheless, on July 15, Appellant filed an untimely motion for new trial based on the *Brady* disclosure. (2 Supp. CR 4-6). Several days later, the trial court ordered the parties to respond regarding:

(1) The untimeliness of Appellant's motion for new trial; and
(2) Whether the trial court had any jurisdiction to hear Appellant's motion in light of the fact that both the reporter's record and clerk's record had already been filed with the court of appeals.

---

[2] This order was renewed on June 29, 2020 by the Texas Supreme Court in its Eighteenth Emergency Order Regarding the COVID-19 State of Disaster. 609 S.W.3d 122 (Tex. 2020).

[3] Neither the State nor the defense were aware of this impeachment evidence during or prior to trial. The *Brady* information was discovered only after a law enforcement database account administrator conducted an audit at the end of May of 2020. (2 RR 9-24).

(3 Supp. CR 4).

On July 20, Appellant filed a motion with the court of appeals to abate his appeal and remand it to the trial court for a hearing. Subsequently, Justice Landau of the First Court of Appeals—based on the Emergency Order's authorization to modify and suspend deadlines—abated and remanded the case to conduct a hearing on Appellant's motion for new trial. Abatement Order, *Thomson v. State*, 696 S.W.3d 31, No. 01-20-00434-CR (Tex. App.—Houston [1st Dist.] Sept. 17, 2020). When signing the Abatement Order, furthermore, Justice Landau notated that she was signing the order while "[a]cting individually."[4] *Id*. Per the Abatement Order, the trial court held a hearing where it denied Appellant's motion for new trial. (2 RR 88-89). The record was supplemented in February of 2021, followed by briefing from the parties.

The First Court issued an opinion in favor of the State on the suppression issues and sufficiency of the evidence. *Thomson v. State*, 696 S.W.3d at 39, 44, 44-45. On the issue regarding Appellant's motion for new trial, however, they found the trial

---

[4] Assuming the motion for new trial was timely filed in the trial court, it's unclear whether Justice Landau could have issued this order individually, since it was potentially dispositive of this case. However, because the motion for new trial was not timely filed, no jurisdiction existed for one justice or the panel of three justices.

court abused its discretion in denying Appellant's motion. *Id.* at 50. The First Court, consequently, reversed and remanded the case for new trial. *Id.*

Both parties petitioned for discretionary review. Upon reaching this Court, the State challenges the First Court's authority to abate for an out-of-time motion for new trial and the finding that Appellant is entitled to a new trial. In turn, Appellant challenges the First Court's suppression ruling and asserts that there was no error in the First Court's reversal of the trial court's denial for new trial.

## Abatement and Jurisdiction

"[C]ourts have such powers and jurisdiction as are defined by our laws constitutional and statutory." *Ex parte Hughes*, 129 S.W.2d 270, 273 (Tex. 1939). "Jurisdiction cannot be 'inherent;' it is conferred by constitution or by statute. . . . [A] trial court's ability to act is limited . . . by the court's retention of jurisdiction or statutory authority over the matter." *State v. Patrick*, 86 S.W.3d 592, 596 (Tex. Crim. App. 2003) (internal citation omitted)). "If [jurisdiction] does not exist, the trial court cannot act." *Id.* at 597. Furthermore, "[p]lenary power does not create jurisdiction where none exists under the law; instead it is a phrase used to describe 'a court's full and absolute power over the subject matter and the parties in a case,' which only exists as defined by statute or rule." *State v. Brent*, 634 S.W.3d

911, 916 (Tex. Crim. App. 2021) (quoting *Ex parte Donaldson*, 86 S.W.3d 231, 234 (Tex. Crim. App. 2002) (Keasler, J., concurring)).

"A trial court's jurisdiction over a criminal case consists of 'the power of the court over the "subject matter" of the case, . . . coupled with "personal" jurisdiction over the accused, which is invoked in felony prosecutions by the filing of an indictment'" or an information in the case of most misdemeanors or as otherwise allowed by law. *State v. Dunbar*, 297 S.W.3d 777, 780 (Tex. Crim. App. 2009) (quoting *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex. Crim. App. 1981)); *see* TEX. CODE CRIM. PROC. arts. 21.01-21.23. "Furthermore, it is likewise axiomatic that where there is no jurisdiction, 'the power of the court to act is as absent as if it did not exist,' . . . and any order entered by a court having no jurisdiction is void." *Garcia*, 596 S.W.2d at 528. "While most rights and procedural matters may be waived, jurisdictional matters may not be." *Lackey v. State*, 574 S.W.2d 97, 100 (Tex. Crim. App. 1978).

"Appellate jurisdiction is invoked and perfected by giving notice of appeal." *Lemmons v. State*, 818 S.W.2d 58, 60 (Tex. Crim. App. 1991); TEX. R. APP. PROC. 25.2 (b) (promulgated under TEX. GOV'T CODE § 22.108). And once the appellate record is filed, "the trial court is deprived of jurisdiction over the case." *Ex parte Macias*, 541 S.W.3d 782, 786 (Tex. Crim. App. 2017). "[J]urisdiction resumes in the trial court

only after the appellate court's mandate issues." *Id.* (internal quotes omitted); *see* TEX. GOV'T CODE §§ 22.102 & 22.226; TEX. R. APP. PROC. 25.2 (b).

However, compared to a trial court's general jurisdiction where a wide range of decisions may be made, appellate jurisdiction is limited. *See e.g.,* TEX. R. APP. PROC. 43.2 ("Types of Judgment").[5] Nevertheless, within its appellate purview, the Texas Rules of Appellate Procedure does allow the reviewing appellate court to abate the appeal and remand it back to the trial court under certain special circumstances. Such an abatement returns jurisdiction to the trial court. But that jurisdiction is limited to the purpose assigned by the reviewing court, which itself is confined to the scope of the reviewing court's appellate jurisdiction. *See Lewis v. State*, 711 S.W.2d 41, 42-44 (Tex. Crim. App. 1986) (finding that "the trial court exceeded her authority under the mandate of abatement," and holding that once an appeal is abated, it is *not* abated for all purposes).

---

[5] Under TEX. R. APP. PROC. 43.2 ("Types of Judgment"):

The *court of appeals* may:
(a) affirm the trial court's judgment in whole or in part;
(b) modify the trial court's judgment and affirm it as modified;
(c) reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered;
(d) reverse the trial court's judgment and *remand* the case for further proceedings."
(e) vacate the trial court's judgment and dismiss the case; or
(f) dismiss the appeal.

(emphasis added).

7

Generally, Texas Rule of Appellate Procedure 43.6 gives the courts of appeals some discretion to issue "appropriate order[s] that the law and the nature of the case require" beyond the types of judgments allowed under Rules 43.2-43.5. However, as a subordinate part to Rule 43 (titled "Judgment of the Court of Appeals"), those powers are confined to the context of a judgment. Under the rule for "Reversible Error," however, Rule 44.4 specifically empowers the court of appeals to abate the case and remand it to the trial court when it meets two conditions precedent:

(1) The trial court's erroneous action or failure or refusal to act *prevents the proper presentation of a case* to the court of appeals; and
(2) The trial court can correct its action or failure to act.

(emphasis added). In the past, we have determined that trial court actions that "prevent the proper presentation of the case" include:

- A trial court's refusal to permit a defendant to make an offer of proof;
- A trial court's failure to conduct a proper *Batson* hearing;
- A trial court's failure to make findings of fact that it was required by law to make.

*LaPointe v. State*, 225 S.W.3d 513, 521 (Tex. Crim. App. 2007) (first citing *Spence v. State*, 758 S.W.2d 597, 599-600 (Tex. Crim. App. 1988); and then citing *Hutchinson v. State*, 86 S.W.3d 636, 638 n.1 (Tex. Crim. App. 2002)); *see also Prudhomme v. State*, 28 S.W.3d 114, 121 (Tex. App.—Texarkana 2000) (finding abatement proper under TEX. R. APP. PROC. 43.6 where appellant was deprived of his right to counsel while

trying to present a motion for new trial and was thus *prevented from making a record for appellate review*).

Thus, abatement (and the jurisdiction it confers to the trial court) is proper when its scope is limited to creating or completing the record necessary for the court of appeals to address as grounds to review. "The key to Rule 44.4 is that there must be an error the appellate court can correct." *LaPointe*, 225 S.W.3d at 522. However, the trial court "exceeds [its] authority under the mandate of abatement" if its actions go beyond preparing a "proper presentation of the case" to the court of appeals. *Lewis*, 711 S.W.2d at 42-44; Tex. R. App. Proc. 44.4. As we have said before, courts (including appellate courts) cannot simply create jurisdiction where none is conferred. *Brent*, 634 S.W.3d at 916; *In re State ex rel. Ogg*, 618 S.W.3d 361, 364 (Tex. Crim. App. 2021). And "where there is no jurisdiction, 'the power of the court to act is as absent as if it did not exist,' . . . and any order entered by a court having no jurisdiction is void." *Garcia*, 596 S.W.2d at 528.

**Application and Discussion**

Here, the record shows that Justice Landau, "acting individually," signed the order for abatement on behalf of the First Court of Appeals. Under Texas Rule of Appellate Procedure 10.4(a), Justice Landau was empowered to entertain certain

motions for relief as an individual justice of the court.[6] However, she was not empowered to issue *judgments* (invoking Rule 43 or any of its subordinate parts) while acting individually.[7] Nevertheless, even if she had the full authority of the lower appellate court, the First Court of Appeals did not have the authority to order an abatement under Rule 44.4.[8] Relying on Rule 44.4 was erroneous because there was a complete failure to satisfy both of the conditions precedent to invoke it.

We initially note that the trial court made no "erroneous action or failure or refusal to act." TEX. R. APP. PROC. 44.4(a)(1). In its initial ruling, the trial court was correct in acknowledging that it had lost its jurisdiction over Appellant's case by the time the new *Brady* information came to light. There was nothing further the trial

---

[6] As relevant under TEX. R. APP. PROC. 10.4:

*Single Justice.* In addition to the authority expressly conferred by these rules or by law, a single justice or judge of an appellate court may grant or deny a request for relief that these rules allow to be sought by motion. . . .

(emphasis in original).

[7] *See supra* note 4.

[8] Under TEX. R. APP. PROC. 44.4:

(a) A *court of appeals* must not affirm or reverse judgment or dismiss an appeal if:
    (1) The trial court's erroneous action or failure or refusal to act prevents the proper presentation of a case to the court of appeals; and
    (2) The trial court can correct its action or failure to act.

(emphasis added).

court was able to do to aid in the "proper presentation of the case." TEX. R. APP. PROC. 44.4(a)(1). The disclosure date of the *Brady* information was well after the trial court lost its plenary power. The Emergency Order giving the power to "modify or suspend deadlines and procedures" did not change this. *Seventeenth Emergency Order*, 609 S.W.3d 119 (Tex. 2020). As we said in *In re State ex rel. Ogg* concerning the same *Emergency Order*:

> This language giving a court the power to modify or suspend "deadline and procedures" presupposes a pre-existing power or authority over the case or the proceedings. A court may extend a deadline or alter a procedure that would otherwise be part of the court proceedings. It does not suggest that a court can create jurisdiction for itself where the jurisdiction would otherwise be absent or that a judge could create authority to preside over proceedings over which the judge would otherwise be barred from presiding.

*In re State ex rel. Ogg*, 618 S.W.3d at 364. Consequently, the trial court never had any authority under its original jurisdiction to develop the record on that point. Thus, there was never an "action or failure to act" which the trial court was ever empowered to correct.[9] TEX. R. APP. PROC. 44.4(a)(2).

---

[9] New facts may be offered into the record via habeas after the trial court has lost its plenary power. As stated above, the new facts in this case involved *Brady* impeachment evidence. Under our writ rules, *Brady* evidence can potentially lead to the granting of relief. *See* TEX. CODE CRIM. PROC. art. 11.07 § 3(d). However, for better or worse, the claims of error on appeal must be confined to the trial record as "properly presented" to the appellate courts. TEX. R. APP. PROC. 44.4(a)(1). Otherwise, appellate review would hold trial courts accountable for mistakes it had no fair opportunity or power to correct.

And because there was never any "action or failure to act" that the trial court could correct, the First Court of Appeals exceeded the limits of its appellate jurisdiction in forcing the trial court's attempt to do so. The appellate court's action "create[d] jurisdiction" where none existed and forced the trial judge to "preside over proceedings over which the judge [was] otherwise barred from presiding" under both the trial court's original jurisdiction and any possible appellate jurisdiction upon remand. *In re Ogg*, 618 S.W.3d at 364. Thus, the trial court's denial of mistrial (on abatement and remand) is void.

## CONCLUSION

The appellate court below exceeded its authority in abating the appeal and ordering the trial court to hear an out-of-time motion for new trial. We, therefore, reverse the First Court of Appeals. All other grounds of review are dismissed as improvidently granted.[10] Accordingly, we remand the case to the court of appeals to continue proceedings consistent with this opinion.

Filed: December 10, 2025
Publish

---

[10] Had the lower appellate court ordered a remand while the trial court still maintained plenary power over the case, the outcome would be different. Nevertheless, under the facts of this case, doing so was not an option available to the court of appeals.